IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EVANGELA FORBES,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 06-510C
(Judge Charles F. Lettow)

**PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to RCFC 56(h)(1), plaintiff respectfully submits the following proposed findings of uncontroverted fact in support of her Motion for Partial Summary Judgment on the so-called "driving time" issue.[1/]

1. 31 U.S.C. § 1344 provides in relevant part as follows:

> § 1344. Passenger carrier use
>
> (a)(1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.

[1/] All numerical page references herein are to the deposition transcript of Gary L. Boggs, who was deposed herein by plaintiff as a RCFC 30(b)(6) witness. Mr. Boggs' deposition appears in Plaintiff's Appendix as Plaintiff's Appendix Exhibit 17.

(2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is –

(A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section . . .

* * *

is transportation for an official purpose, when approved in writing by the head of the Federal agency.

(Plaintiff's Appendix Exhibit 15).

2. 41 C.F.R. Part 102-5 provides in relevant part as follows:

**PART 102-5 – HOME-TO-WORK TRANSPORTATION**

* * *

**Subpart A – General**

**§ 102-5.5 Preamble.**

(a) The questions and associated answers in this part are regulatory in effect. Thus compliance with the written text of this part is required by all to whom it applies.

(b) The terms "we," "I," "our," "you," and "your," when used in this part, mean you as a Federal agency, an agency head, or an employee, as appropriate.

**§ 102-5.10 What does this part cover?**

This part covers the use of Government passenger carriers to transport employees between their homes and places of work.

**§ 102-5.15 Who is covered by this part?**

This part covers Federal agency employees in the executive, judicial, and legislative branches of the Government, with the exception of employees of the Senate, House of Representatives, Architect of the Capitol, and government of the District of Columbia.

* * *

**§ 102-5.30 Who definitions apply to this part?**

The following definitions apply to this part:

* * *

*Compelling operational considerations* means those circumstances where home-to-work transportation is essential to the conduct of official business or would substantially increase a Federal agency's efficiency and economy.

* * *

*Employee* means a Federal officer or employee of a Federal agency . . .

*Federal agency* means:

* * *

(2) An executive department (as defined in 5 U.S.C. 101);

* * *

*Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work (multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

*Home* means the primary place where an employee resides and from which the employee commutes to his/her place of work.

*Home-to-work transportation* means the use of a Government passenger carrier to transport an employee between his/her home and place of work.

*Passenger carrier* means a motor vehicle, aircraft, boat, ship, or other similar means of transportation that is owned (including those that have come into the possession of the Government by forfeiture or donation), leased, or rented (non-TDY) by the United States Government.

*Work* means any place within the accepted commuting area, as determined by the Federal agency for the locality involved, where an employee performs his/her official duties.

**Subpart B – Authorizing Home-to-Work Transportation**

**§ 102-5.35 Who is authorized home-to-work transportation?**

* * *

Those employees engaged in field work . . .

* * *

**§ 102-5.45 Should determinations be completed before an employee is provided with home-to-work transportation?**

Yes, determinations should be completed before an employee is provided with home-to-work transportation unless it is impracticable to do so.

* * *

**§ 102-5.55 How do we prepare determinations?**

Determinations must be in writing and include the:

(a) Name and title of the employee (or other identification, if confidential);

(b) Reason for authorizing home-to-work transportation; and

(c) Anticipated duration of the authorization.

**§ 102-5.60 How long are initial determinations effective?**

Initial determinations are effective for no longer than:

(a) Two years for field work, updated as necessary; and

(b) Fifteen days for other circumstances.

* * *

**§102-5.70 What considerations apply in making a determination to authorize home-to-work transportation for field work?**

Agencies should consider the following when making a determination to authorize home-to-work transportation for field work:

(a) The location of the employee's home in proximity to his/her work and to the locations where non-TDY [Temporary Duty] travel is required; and

(b) The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

**§ 102-5.75 What circumstances do not establish a basis for authorizing home-to-work transportation for field work?**

The following circumstances do not establish a basis for authorizing home-to-work transportation for field work:

(a) When an employee assigned to field work is not actually performing field work.

(b) When the employee's workday begins at his/her work; or

(c) When the employee normally commutes to a fixed location, however far removed from his/her official duty station (for example, auditors or investigators assigned to a defense contractor plant).

Note to § 102–5.75: For instances where an employee is authorized home-to-work transportation under the field work provision, but performs field work only on an intermittent basis, the agency shall establish procedures to ensure that a Government passenger carrier is used only when field work is actually being performed. Although some employees' daily work station is not located in a Government office, these employees are not performing

field work. Like all Government employees, employees working in a "field office" are responsible for their own commuting costs.

* * *

**§ 102-5.95 Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation?**

No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

**§ 102-5.100 May we use home-to-work transportation for other than official purposes?**

No, you may not use home-to-work transportation for other than official purposes. However, if your agency has prescribed rules for the incidental use of Government vehicles (as provided in 31 U.S.C. note), you may use the vehicle in accordance with those rules in connection with an existing home-to-work authorization.

* * *

**Subpart C – Documenting and Reporting Determinations**

* * *

**§ 102-5.120 What are our responsibilities for documenting use of home-to-work transportation?**

Your responsibilities for documenting use of home-to-work transportation are that you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes. Each agency may decide the organizational level at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:

(a) Name and title of employee (or other identification, if confidential) using the passenger carrier;

(b) Name and title of person authorizing use;

(c) Passenger carrier identification;

(d) Date(s) home-to-work transportation is authorized;

(e) Location of residence;

(f) Duration; and

(g) Circumstances requiring home-to-work transportation.

(Plaintiff's Appendix Exhibit 6).

3. The Drug Enforcement Administration ("DEA") is a part of an executive agency of the United States Government, namely, the United States Department of Justice. [41-42]

4. Diversion Investigators ("DIs") are employees of a federal agency within the meaning of 41 C.F.R. Part 102.5's definition of "employee." [41]

5. Michele Leonhart is presently the Acting Administrator of DEA. [39-40]

6. Under 31 U.S.C. § 1344(a)(1) and (2)(A) a requirement for transportation of a federal employee in an official government vehicle ("OGV") between home and work is that such transportation be for the purpose of performing field work. [18-19]

7. As to the definition of "field work," 41 C.F.R. 102-5.30 provides:

> Field work means official work requiring the employee's presence at various locations other than his/her regular place of work (multiple stops, itinerant-type travel) within the accepted local commuting area, limited use beyond the local or commuting area, or transportation to remote locations that are only accessible by government-provided transportation are examples of field work.

According to DEA, the foregoing definition represents "a cursory overview of the definition of field work." [42]

8. Field work is the only justification for home/work driving by DIs. [110-111]

9. An example of field work in the case of DIs is where a DI conducts either a regulatory, civil or criminal investigation that would be conducted at a location other than at a DEA

office. It would be at a location such as at the location of a pharmacist, manufacturer or distributor that is a registrant with DEA. DIs would have to go out and do some type of investigation that involves such subjects where it would be more convenient to take the OGV from a DI's residence to such location, as opposed to coming into the DEA office, picking up a vehicle and then going out to the field work location. [20]

10. As to the definition in 41 C.F.R. 102-5.30 of "compelling operational consideration," which declares those to be "circumstances where home-to-work transportation is essential to the conduct of official business, or would substantially increase a federal agency's efficiency and economy," according to DEA that definition is "a component of the field work consideration." [40]

11. 41. C.F.R. § 102-5.70 declares that "the use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the government." An example of the foregoing might be where it would be more advantageous to the government for the employee to drive from his residence to the location of the field work than it would be for the employee to drive from his residence to the DEA office, check out a pool car or an OGV and then drive to the location where the field work is. This would be an advantage to the government in that employees would be able to reach their field work location and perform at their field work location for a greater period of time during normal work hours than they would be able to if they had to go to the office to pick up a car. [49-50]

12. There may be an instance where a DEA registrant location which would be, for example, a manufacturer or distributor, where the DI would be conducting either an audit or an investigation at that location and the location is closer to the employee's residence than it is for the employee to drive from the residence to the DEA office and then turn around and go from the DEA

office out to where the manufacturer's location is. The efficiency is that DIs could be onsite at the field location for a greater period of time to conduct whatever business they needed to conduct. And that is because they go directly from their home in the OGV to the site where they do their field work rather than go to their office, obtain a car and then go back to the field work location. This is why the efficiency and economy to the government is substantially increased. Once DIs are at the field site, more work gets done by the DIs under these circumstances. DIs would go from their home to the field location, begin working at that point rather than having to spend a great deal of time getting there by getting their car at the office. [51-52]

13. The same would be true at the other end of the day. DIs are able to work for a longer period of time at the field site location because otherwise they would have to drive their government car back to their office and the time that they spend driving their car back to their office would now be spent at the location doing their work. That is the substantial increase in the efficiency and economy to the government that is achieved. [52-53]

14. Plaintiff's Exhibit 12 consists of three documents. The first is a memorandum authored by Joseph Keefe, who was DEA's Chief of Operations in August, 2001 ("Keefe Memorandum"). The Keefe Memorandum describes the Diversion Control Program, the role of Diversion Investigators within the program and the type of activities that DIs either can or cannot perform. [95-96]

15. Page 1 and 2 and beyond in the Keefe Memorandum provide a summary of what the job of Diversion Investigator consists of. [98]

16. The Keefe Memorandum was superseded by the second document in Plaintiff's Exhibit 12. It was issued by Chief of Operations Mike Ferguson, in September of 2004. Other than the 2004 Ferguson Memorandum, the August 3, 2001 Keefe Memorandum is still in effect. [96-97]

17. The Keefe Memorandum provides in relevant part as follows:

**Memorandum**

| | |
|---|---|
| Subject<br>Diversion Control Program<br>(FFS: 060-01) | Date<br>AUG - 3 2001 |

**To**
Special Agents in Charge
Diversion Program Managers

**From**
Joseph D. Keefe
Chief of Operations

* * *

**General Mission Statement**:

The DEA DCP was established to administer this country's closed distribution system for controlled substances and regulated chemicals as well as to prevent the diversion of those substances into the illicit drug market. The DCP is devoted to working in partnership with conscientious registrants throughout the United States, while investigating the diversion of legal substances for illicit purposes worldwide.

**Diversion Investigators**:

The DI is a specialist who is responsible for addressing the problem of diversion of controlled pharmaceuticals and regulated chemicals from the legitimate channels in which they are manufactured, distributed and dispensed. The role of the DI is to investigate suspected sources of diversion and to initiate appropriate administrative, civil and/or criminal action against them.

In order to accomplish this mission, a wide range of work activities is employed by DIs. A full range of diversion investigations, including pre-registrant, scheduled, security, complaint (i.e., public interest, civil, or criminal), within the drug and chemical program areas are conducted by DIs. However, DIs must stay within the scope of their authority when conducting complaint investigations. DIs must concentrate their efforts on members of the registrant community and other authorized handlers of these substances and not on individuals that are in the

traditional realm of criminal activity. Also, whenever possible, DIs should limit their activity to only the highest priority targets warranting federal investigation.

* * *

**Vehicles:**

As is current DOJ/DEA policy, DIs may utilize OGVs in the performance of their duties. Under the current DEA OGV plan for routine fieldwork, DIs are authorized home-to-work (HTW) use of OGVs at the convenience of the government on a case-by-case basis. All HTW use of OGVs by DIs must be approved by the SAC on a case-by-case basis. Approvals for extended periods of time are no longer appropriate. Fifteen-day approvals will be the maximum permitted. This process should not be used by field management to routinely approve HTW for its employees. Each SAC will submit all 349c forms, including case number and purpose, to the Deputy Assistant Administrator, Office of Diversion Control, every 90 days.

* * *

18. Plaintiff's Appendix Exhibit 5 is a file of DEA 349-C Forms prepared by DI Denise Jordan. These are examples of what is required under 41 C.F.R. § 102-5.120. [60-61]

19. DEA Form 349-C, is a certification and authorization form for use of a government vehicle ("OGV") between home and work in connection with the performance of field work by Diversion Investigators ("DIs"). [16] [Pl. App. Ex. 5]

20. The first page of Pl. App. Ex. 5 is a DEA Form 349-C submitted on behalf of DI Denise Jordan. It seeks authorization for home/work utilization of an OGV for field work. Its approval is a requirement for obtaining an OGV for the performance of field work by a DI. [18] [Pl. App. Ex. 5]

21. It is DEA policy that approval of the use of an OGV for field work be at the Senior Executive Service level, which in many offices is the Special Agent in Charge ("SAC"). In the case of Ms. Jordan, the particular office involved is the New York Field Division Office. Associate SAC

is an SES level position. The Associate SAC has authority under DEA's rules to approve or deny home-to-work utilization for field work by a DI. [23-24]

22. A Form 349-C is what all DEA DIs presently fill out and submit when they seek to requisition an OGV for the purposes of performing field work. [98]

23. On the first page of the first 349-C Form for DI Denise Jordan there is an entry entitled "to conduct chemical verification on target and associates under CI-022097 and CI-032033." Pl. App. Ex. 5. The foregoing designation indicates that DI Jordan was working on criminal investigations during the dates that the authorization for field work was to be conducted. The requested dates were between May 14-21 of 2004. The form indicates the distance between DI Jordan's residence and her office. The purpose of indicating the foregoing distance on the form is to determine how far away from the office the individual resides. Generally, the SAC of an office sets a radius for which people can utilize an OGV and take the vehicle to their residence. This would be to help determine whether it would be in the best interest of the government for the individual to utilize an official government vehicle on a home-to-work basis to drive from their home to wherever the location they needed to go to in order to conduct field work. [24-26]

24. A radius is generally determined based upon the needs of the agency and the efficient use of OGVs. The radius may vary from area to area. In some offices the radius is about 50 miles but in other offices it may be shorter or longer depending on the circumstances of the office. [26-27]

25. The 349-C Form declares that "I certify that this home-to-work utilization is required for the performance of field work." It is required to be signed by either the SAC or the SAC's designee from the requesting DI's office. [31] [Pl. App. Ex. 5.]

26. At the bottom of the 349-C there is space for indicating the beginning odometer reading of the vehicle when it is taken out from the office and the ending odometer reading when it is returned to the office, and what the total miles driven is. [32]

27. The third page of Pl. App. Ex. 5 for DI Jordan is a 349-C indicating that between June 4, 2004 and June 14, 2004 DI Jordan drove 372 miles in connection with the performance of field work. [33-34]

28. 41 C.F.R. § 102-5.45 asks whether "determinations of whether to authorize field work should be completed before an employee is provided with home-to-work transportation?" The provision declares that the answer to this question is "yes." "Determination should be completed before an employee is provided with home-to-work transportation, unless it is impracticable to do so." This represents the policy of DEA with respect to authorizing home-to-work transportation by DIs. [45-46]

29. Generally, DEA is in a position to determine in advance whether home-to-work transportation through the driving of OGVs will be conducted. Before any DI at DEA is authorized to take out an OGV, a determination is made by DEA that it is within the rules and is appropriate for the purposes of performing field work. [47]

30. The DEA policy for authorizing a vehicle for field work by DIs is that within a 15-day period of time there is a certification on the Form 349-C that is done. Certification at DEA does not exceed a 15-day period. [48]

31. The considerations set forth at 41 C.F.R. § 102-5.70 are the considerations that are utilized by DEA in determining whether to authorize home-to-work transportation for field work by DIs. [48-49].

32. Plaintiff's Appendix Exhibit 7 is a copy of what DEA considers to be a Divisional Order. It is a Divisional Order for the New York Field Division of DEA, dated May 6, 2004. It describes the home-to-work use of an OGV. It sets forth the policy under certain circumstances for home-to-work usage of an OGV within the New York Field Division Office. It sets forth the maximum radius for the OGV to be taken from the Field Division office home and returned. It describes the related reporting requirements, and in some instances, the chain of command for those reports or certifications for the use of the home-to-work form that must be filled out by DEA employees. [63-64]

33. Plaintiff's Appendix Exhibit 7 provides in part as follows:

**UNITED STATES DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**
**NEW YORK FIELD DIVISION**

**99 TENTH AVENUE**
**NEW YORK, NY 10011**

**SUBJECT: HOME TO WORK USAGE OF OGVs DATE: May 6, 2004**

---

**A. <u>PURPOSE</u>**

To set the maximum one-way distance which an authorized employee will be permitted to travel in an Official Government Vehicle (OGV) under the guidelines of Home-To-Work Usage-of-Official Government Vehicles (FFS: 190-06).

**B. <u>BACKGROUND</u>**

Special Agents, Diversion Investigators, and Task Force Officers are often authorized to store assigned OGVs at their residences to promote the safe and efficient performance of their law enforcement duties. The employee may be granted authorization to drive the vehicle to and from the employee's residence when it is in the best interests of DEA that the

employee has ready access to an OGV. This authorization is documented on form DEA 349n or 349c as appropriate.

Currently 41 C.F.R. 101-6.402 states that each Federal agency shall consider the location of the employee's residence prior to authorizing home-to-work transportation. Such transportation shall be authorized only within the usual commuting area for the local area of the employee's place of employment. Consequently, it is up to the DEA to consider where an employee resides before authorizing home-to-work transportation.

* * *

**D. <u>RESPONSIBILITY</u>**

It is the responsibility of first line supervisors to insure that all personnel assigned OGVs complete the required forms 349b or 349c as appropriate. The 349b and 349c forms will be forwarded to the appropriate Associate SAC., through the chain of command for final review and approval. Federal Regulation and Administrative Manual Notice dated September 7, 1989, regarding Chapter 0326.7, requires certification for home-to-work OGV usage for all Special Agent, Task Force Officer, and other criminal investigator personnel who are authorized OGV take home privileges, and completion of a Form 349b on a quarterly basis. The forms must be completed at the beginning of every quarter and when the assignment of an OGV changes. Certification of Special Agents, Task Force officers, and other criminal investigator personnel who are assigned OGVs will also occur on an annual basis by the SAC. This ay be accomplished by issuing a single comprehensive memorandum rather than through individual DEA Form 349b.

Diversion Investigators, Intelligence Analysts, and other personnel who may be authorized short-term home-to-work OGV usage must complete Form 349c. Authorization on Form 349c is to be done on a case-by-case basis, for a time period not to exceed 15 calendar days per authorization.

* * *

34. Plaintiff's Appendix Exhibit 7 declares that "the policy of the New York Field Division for qualification for home-to-work OGV usage authorization shall be that the one-way distance for an employee from their residence to 99 10th Avenue shall not exceed 75 miles." [66]

35. In this case, the New York Field Division through this Divisional Order set 75 miles to be the radius one way from the actual New York Field Division Office to the employee's home. In the case of a DI, if the employee lived within 60 miles of the New York office it would be appropriate pursuant to this order under appropriate circumstances to authorize an OGV for field work. [67]

36. Plaintiff's Appendix Exhibit 8 is a subset of Section 6124 of the DEA Agent's Manual. It begins at page 9 and goes to page 30 of a 34 page section. At the bottom of page 9, paragraph 6124.24, declares: "[S]uch assignments will be in the interest of DEA and are not an employee prerogative." This means at DEA that it is at the agency's and the supervisors' discretion as to the specific area where a vehicle is assigned and who will specifically assign a specific car to a specific individual, as opposed to the individuals deciding which vehicle they would prefer over another vehicle. [69-70]

37. Plaintiff's Appendix Exhibit 8 provides in part as follows:

> B. The operation and maintenance of official government vehicles are the responsibility of the SAC, Country Attache, Laboratory Director, or senior Headquarters Office Head, or their designees, for those offices having assigned vehicles. Managers may authorize use of vehicles when Special Agents, Diversion Investigators and other DEA employees require motor transportation in the conduct of official business. Agents, Diversion Investigators and other DEA employees who use vehicles for official use will be held strictly responsible for the operation, maintenance and intermittent storage of the vehicles, as outlined in this section.

* * *

A. Official Government Vehicles (OGVs) will be used only for official purposes. The term official purposes will be interpreted strictly and will not be construed to encompass the mingling of official business with personal business. Use of an OGV for transportation of employees between their domiciles and place of employment can only be justified when affirmatively authorized by statute, as in Title 31, Section 1344 (31 USC 1344).

**6124.31 Criteria for Use**

A. The overall criteria for use of OGVs by DEA personnel is Public Law 99-550. This has been codified into Title 31 USC 1344 and its implementing regulations, 41 CFR 101-6. These set forth the requirements governing the home to work use of any official vehicles by government employees. In essence, these state that any such use is prohibited unless it conforms to one of the four specified exemptions. Additionally, these criteria provide that only the head of a federal agency (that is, the Attorney General) may decide whether a given situation meets the standards for one of the exemptions.

B. For DEA, there exist four exemptions. These include, the Administrator, field work, criminal law enforcement and clear and present danger. The requirement for each of these exemptions is set forth as follows:

1. Pursuant to 31 USC 1344(a)(2)(B), the DEA Administrator is granted the emergency use of an OGV for reasons of personal safety and security.

2. Under the provisions of 31 USC 1344(a)(2)(A), Field Work is defined as those employees whose assignments and duties are such that a need periodically exists to report directly to various locations other than their fixed normal place of work, both within and without their normal commuting area or to remain at various locations after the close of normal business hours: in both instances the juxtaposition of their residence, normal place of work and that the work site being such as to make it advantageous to the government to authorize the home to work use of an OGV. The field work exemption specifically excludes the use of home to work transportation when the employee's work day begins at his or her official government duty station, or when the employees normally commutes to a fixed location, however far from his or her official duty station. For Headquarters motor pool. See 0325 of the

Administrative Manual. Vehicles from the Headquarters motor pool may be assigned to specific elements (i.e., OC, DO, OF) with keys available to both motor pool or the Office of Operations Management (OM). (See Exhibit 2). The motor pool chief will ensure that regular maintenance is routinely performed on all Headquarters OGVs per DEA policy.

* * *

A. Using an OGV is strictly prohibited under the following circumstances: After the consumption of any amount of alcohol or drugs; solely for the purpose of travel to and from residences; for attending personal business; or for the transportation of any person not engaged in the conduct of official business or not otherwise being transported in the interest of the government.

**6124.33 Commuting Distances Between Domicile and Work**

A. In assessing the request for certification for home-to-work utilization of an OGV, the SAC/CA will determine if the employee's residence is located within the maximum allowable distance established for the particular office to which the employee is assigned. (See paragraph 1 below.)

1. Federal regulations (41 CFR 101-6.402) state that, "Each Federal Agency shall consider the location of the employee's residence prior to authorizing home-to-work transportation. Such transportation shall be authorized only within the usual commuting area for the locals of the employee's place of employment." Accordingly, SACs and Country Attaches will publish division orders or office directives establishing maximum home-to-work distance policy for each office under their supervision. (Copies must be sent to OM and SARR). He/she will ensure that all employees newly assigned to the division or office are informed of the policy prior to relocation.

* * *

**6124.39 Suspension of OGV Use for Alcohol Related Incidents**

A. SACs and CAs will suspend the certification for the privilege of home-to-work utilization of an OGV for any employee involved in an alcohol-related incident while operating an OGV or POV. The suspension will remain in effect from the date of the incident for a

period of not less than 60 days or until such time that the SAC or CA feels confident that the offense was atypical of the employee's normal conduct and recidivism is unlikely. Commencing from the date of the incident and continuing through any latter decisions to deny certification use of the OGV, the SAC/CA in reaching a decision in this regard, may consult with the Manager, Employee Assistance Program (EAP), or the EAP Area Clinician, when appropriate.

B. Likewise, the SAC or CA will determine that reinstatement of the certification is justified. The reasons supporting the decision shall be articulated via memorandum. A copy will be forwarded to the Board of Professional Conduct (HB). SACs and CAs are accountable for carefully exercising good judgment in making these determinations.

* * *

**6127.67 Maintenance Responsibilities**

A. It is the responsibility of the assigned OGV operator to conduct routine maintenance and required repairs as follows:

1. Routine oil change and lube, every 3 months or 3,000 miles, which ever occurs first. OGV operators are required to change or replenish fluids or maintain a vehicle in the manner proscribed by the manufacturer is so recommended. Such maintenance will be noted in the remarks section of the DEA-349.

2. For vehicles under manufacturer's warranty, maintenance will be completed by the OGV operator, according to the established vehicle schedules in the owner's manual. Failure to adhere to these conditions could void the warranty.

3. A full tune up will be completed according to the vehicle factory warranty. Thereafter, this service will be completed every 20,000 miles or 12 months, whichever occurs first.

4. Other vehicle repairs will be performed, as required. These repairs will be approved, in advance, via completion of the DEA-349a by the operator and approval by the first line supervisor. These repairs will also be documented in the DEA-349.

5. Failure of the OGV operator to comply with these requirements may result in disciplinary action and/or a financial liability assessment against him. (See 0317 of the Administrative Manual.)

B. The first line supervisor will be responsible to ensure that the routine maintenance of all vehicles is completed according to the above schedule. First line supervisors will be responsible for conducting a physical inspection of all vehicles on at least a quarterly basis. First line supervisors will document certification of required routine maintenance and vehicle inspection in the "Remarks" section of the DEA-349.

C. The assigned Divisional Fleet Manager will review on a quarterly basis the compliance with required routine maintenance by divisional operators, through review of the DEA-349. In instances where required maintenance has not been completed, the Fleet Manager will forward a written reminder to the operator, and a copy to the first line supervisor. Subsequent reminders will be forwarded to the operator, the first line supervisor and the appropriate ASAC for corrective action.

* * *

B. Official funds will not be stored in an unattended vehicle.

C. Sensitive documents and notes will not be stored in an unattended vehicle.

D. Firearms will not be stored in an unattended vehicle except in those instances where the SAC/country Attache has authorized the storage of a shotgun in a locked rack in a locked trunk, or a short-term emergency situation (see 6122).

E. Neither seized property nor drug evidence will be stored unattended in an OGV.

F. Where short term storage of these items is unavoidable, these items will be stored in a locked trunk. Should it become necessary to park the OGV in a parking garage with either the doors unlocked or the leaving the OGV key with an attendant, such equipment may only be stored in the locked trunk if it can be locked with a separate key, inaccessible to the attendants.

G. Vandalism to or a theft of the OGV or any equipment in the vehicle will be reported to field office management immediately, and management will ensure that appropriate local authorities and, if applicable, the FBI are promptly notified. Theft or vandalism to an OGV will be reported in the same manner as an accident (see 6124.81 below) except that forms SF-91, SF91a, SF-94 and 0F-26 do not apply. Thefts or damages to property valued in excess of $100 will be reported and process in accordance with the Personal property negligence/Liability Assessment process as set forth in Section 0317 of the DEA Administrative Manual. A finding of negligence on the part of the employee may result in disciplinary action and/or personal liability. Efforts taken to apprehend the perpertrator(s) and/or recover the property should be included in the DEA-29 and accompanying memoranda. If a stolen vehicle is subsequently recovered, this fact should be reported via teletype to Headquarters (SAFP and HB).

38. Plaintiff's Appendix Exhibit 9 is Appendix A to the DEA Manual. It outlines specific information regarding the use of an OGV at DEA, the prohibitions regarding use of an OGV at DEA, and some of the responsibilities of the person that is assigned an OGV at DEA. [87]

39. Plaintiff's Appendix Exhibit 9 is currently in effect. The policies and practices set forth in Appendix A, pages 9 through 11, are followed by DEA insofar as they apply to DIs, except with regard to any superseding policies or divisional orders. One such superseding policy is the 2006 memorandum by Deputy Administrator, Michele Leonhart (Pl. Ex. 10, that allows incidental personal stops while driving an OGV. Those supersede this particular document). [88-89]

40. Plaintiff's Appendix Exhibit 9 provides in part:

I. Official Government Vehicles. Official Government vehicles (OGVs) shall be used for official purposes. 31 U.S.C. 1349(b). The term official purposes will be interpreted strictly and will not be construed to encompass the mingling of official business with personal business. Use of an OGV for transportation of employees between their domiciles and places of employment can only be justified when affirmatively authorized by statute, as in 31 USC 1344.

1. The term Official Government Vehicles includes not only those vehicles assigned to DEA's fleet but also those vehicles which

may be leased and rented and/or loaned to DEA by other agencies and entities to include vehicles rented or obtained pursuant to an agency travel orders, acquired under a government credit card or under the terms and conditions of the government car rental contract with various car rental companies. This term also includes aircraft and other modes of transportation.

2. OGVs shall be operated safely and prudently at all times. DEA personnel shall drive defensively and shall exercise due care in the operation of a vehicle. Except in exigent enforcement activities, DEA personnel shall obey all regulations, statutes, ordinances, and/or other applicable guidance in their operation of a vehicle. Even in exigent enforcement operations, vehicles shall be operated with due regard for the safety and preservation of human life.

3. An employee who willfully uses or authorizes the use of an OGV for other than official purposes is subject to disciplinary/adverse action. Title 31 USC 1349(b) provides a minimum 30-day suspension for an employee who willfully uses or authorizes the use of any official Government owned or leased motor vehicle or aircraft for other than official purposes.

4. For the purpose of this section, willful use includes but is not limited to unauthorized use with or without illegal intent, intentional disregard, or plain indifference to statutory or regulatory requirements.

5. While not all encompassing, listed below are some examples of instances wherein the use of the OGV is not authorized:

a. Operating an OGV without possessing a valid state driver's license from the state, territory or possession where currently assigned. (State driver's license includes those issued by the District of Columbia, Puerto Rico, or a territory or possession of the United States.) The license must be in the operator's possession at all times while driving an OGv.

b. Using an OGV to visit relatives, friends, acquaintances, etc., when such visits are not conducted for official business purposes.

c. Using an OGV to transport any individual when such individual is not in an official business capacity.

d. Transporting children to and from school or a spouse or friend to and from work even though the school or place of work is on the regular route to the operator's official duty station.

e. Using the OGV for the express purpose of transporting or towing of personal property when not related to official business; i.e., transporting furniture, gardening equipment and the like or towing boats and/or trailers.

f. Permitting an unauthorized person to operate an OGV.

g. Using an OGV solely for commuting purposes or for transportation between a person's residence. Storage of an OGV at an employee's residence is permissible only when authority is obtained in accordance with the Agents Manual, Section 6124, and the Administrative Manual, Subsection 0325.5.

h. Traveling to and stopping at a drinking establishment when not in the interest of official business. General discussions of official business relating to enforcement activities conducted in a bar or cocktail lounge do not constitute official business.

I. Using an OGV for personal business such as leaving the duty station or residence to cash paychecks, to pay bills, drop off or pick up mail, pick up dry cleaning, grocery shopping, etc.

j. While under the influence or after the consumption of alcohol.

k. Leaving the scene of an accident, or not cooperating with the appropriate authorities conducting an investigation of an accident or other vehicle related incident or inquiry.

6. Alcohol related incidents involving DEA employees operating an OGV or privately-owned vehicle (POV) will be handled as follows:

a. the SAC, CA, or Office Head will immediately suspend the certification for the privilege of home-to-work utilization of an OGV for any employee involved in an alcohol-related incident operating an OGV or POV.

b. This suspension will remain in effect until such time that the SAC, CA or Office Head feels confident that the offense is atypical of the employee's normal conduct and that recidivism is unlikely. In no event shall the suspension of the home-to-work driving certification be less than 60 days. In reaching this decision, the Employee Assistance Program (EAP), EAP Clinician, or other agency designated health official may be contacted.

c. The suspension of an individual's home-to-work certification will be reported in teletype to Headquarters, (attention: OPR, HB, and HPMH). When an individual's home-to-work driving privileges are restored, reasons supporting the decision shall be articulated via memorandum to HB. This memorandum to HB will be for informational purposes only, but HB can request additional if deemed appropriate.

d. SACs, CAs, and Office Heads are accountable for carefully exercising good judgment in making these determinations. In certain limited circumstances employees may transport dependents in an OGV when the dependents are accompanying them to quasi-social functions to which they have been invited in their official capacity. Prior approval must be granted before an OGV is use for such reasons. Employees should contact the Office of Personnel for additional guidance as needed.

41. Plaintiff's Appendix Exhibit 13 accurately reflects the policies and practices of DEA with regard to motor vehicle property. [99-100] Plaintiff's Appendix Exhibit 13 provides in part as follows:

**0320, Administrative Manual**

**SUBCHAPTER 032 PROPERTY (MOTOR VEHICLES)**

A. All DEA employees, and all non-DEA employees authorized to drive DEA OGVs, are responsible for complying with CFR 41and agency regulations, policies and procedures when operating OGVs. If an employee uses, or authorizes the use of, an OGV for other than official purposes, the employee is subject to suspension of at least one month or other disciplinary action. The use of OGVs is prohibited under the following circumstances (see memorandum from Deputy Administrator Michele M. Leonhart, dated July 3, 2006, subject Use of Official Government Vehicles; also see 2735.15, paragraph I, of the Personnel Manual and 6124.3 of the Agents Manual):

1. While under the influence of alcohol or drugs.

2. Solely for the purpose of travel to and from residences.

3. In the conduct of personal business.

4. Transporting any person not engaged in the conduct of official business or otherwise not being transported in the interest of the Government.

42. Paragraph B on page 10 of Plaintiff's Appendix Exhibit 13, declares: "Agents, Diversion Investigators and other DEA employees who use vehicles for official use will be held strictly responsible for the operation, maintenance and intermittent storage of the vehicles as outlined in this section." [70]

43. There are certain criteria or policies within DEA as to which maintenance will be performed and when it will be performed on an OGV. It is the responsibility of the employee that is assigned the vehicle to ensure that maintenance is conducted within the appropriate year, time frame, or maintenance criteria as set forth by the manufacturer of the automobile. DIs are required to ensure that the maintenance gets done. [70-71]

44. Page 23, 6124.61, second sentence, declares that failure to perform at appropriate intervals all required maintenance could result in disciplinary action or personal liability for damages as attributable to neglect. This is consistent with the policy and practice of DEA. It is the responsibility of the employee to make sure that the maintenance is performed at appropriate times and if they do not do that they are subject to disciplinary action. [80-81]

45. Page 26, 6124.67 elaborates upon the responsibilities of an OGV operator to conduct routine maintenance and required repairs. This is the policy and practice of DEA in these matters. [85]

46. Plaintiff's Appendix Exhibit 16 is 31 U.S.C. § 1349(b). It provides:

* * *

> (b) An officer or employee who willfully uses or authorizes the use of a passenger motor vehicle or aircraft owned or leased by the United States Government (except for an official purpose authorized by section 1344 of this title) or otherwise violates section 1344 shall be suspended without pay by the head of the agency. The officer or employee shall be suspended at least one month, and when circumstances warrant, for a longer period or summarily removed from office.

47. Plaintiff's Appendix Exhibit 11 entitled "DEA Standards of Conduct," relating to "use of government property," at paragraph G, represent the policies and practices of DEA at this time insofar as DIs are concerned. [91]

48. Paragraph I, with the exception of the superseding memorandum of Deputy Administrator Leonhart, (Plaintiff's Appendix Exhibit 10), reflects current DEA policy. [93-94]

49. Under P-2 which provides "DEA personnel will not consume or be under the influence of intoxicants during their official duty hours," DIs are not permitted to consume or be

under the influence of intoxicants while they are driving an OGV between their homes and an assigned field work site. [93-94] [Pl. App. Ex. 11].

50. Drinking by DIs immediately prior to driving is prohibited by DEA. If a DI were to have a drink or a beer before driving an OGV he/she would be subject to the loss of the use of home-to-work utilization of an OGV. If the employee was arrested or charged with a safety offense the matter would be referred to the Office of Professional Responsibility, but this particular portion of the DEA Manual would kick in and the supervisor or the Special Agent in Charge would suspend the employee's utilization of an OGV for a period of time. A suspension would go into effect immediately whereas a determination or outcome of the incident that was referred to the Office of Professional Responsibility might come at a much later time. An example of an alcohol related incident while operating an OGV involves someone driving an OGV under the influence of alcohol. [77-79]

51. There may have been instances where if a person was using an OGV and there was an alcohol related offense, the employee might have to pay for the damages to the particular vehicle since it was being operated in a manner inconsistent with the policies of DEA. A person might be held liable if they had an accident where they were at fault, perhaps because they had been drinking, and this could be the case if they were driving home from field work and had been drinking and had an accident. [82-83]

52. According to DEA, the reasons why DIs are prohibited from consuming or being under the influence of intoxicants is that intoxicants deprive individuals of the normal clearness of intellect and personal control, which a person would otherwise possess, and that the use of such substances while on duty is inherently inconsistent with the mission of DEA. [95]

53. Plaintiff's Appendix Exhibit 10, is an order from then Deputy DEA Administrator Leonhart. [89-90]

54. In July of 2006, the then Deputy Administrator, Michele Leonhart, published a memorandum in which she authorized the use of an OGV for incidental personal purposes for DEA employee who were authorized to drive OGVs. Such incidental use includes picking up dry cleaning, picking up a loaf of bread, and going to a workout facility or fitness facility, but it does not include driving a family member or friend in the vehicle. [58-59]

55. Plaintiff's Exhibit 10, provides in part:

**Memorandum**

| Subject<br>Use of Official Government Vehicles<br>(DFN: 060-01) | Date<br>July 3, 2006 |
|---|---|

**To**

All Employees

**From**

Michele M. Leonhart
Deputy Administrator

It has been some time since guidance regarding the use of an Official Government Vehicle (OGV) has been issued. Authorization for home-to-work use of an OGV is in the best interest of the government and the penalties for unauthorized use and/or misuse of an OGV can result in serious disciplinary action. However, in keeping with the President's directive on conserving gasoline and because our employees work irregular hours and are subject to being recalled to duty at any time, in some circumstances it is both in the interest of the agency and efficient to permit incidental personal use of an OGV. With this in mind, I am issuing the following guidance regarding the OGV policy.

> An employee who is assigned an OGV must use that vehicle for official purposes only. It is in the interest of the agency to permit incidental personal use of an OGV which is secondary to the primary official use of an OGV. Accordingly, an employee who is using an OGV for an official purpose, including home-to-work transportation when authorized, is permitted to interrupt that official use to make stops for personal needs (such as picking up dry cleaning, hospital visitation, or stopping by a convenience store, bank, school or work out facility), so long as the stop is reasonable in distance and time and does not impair the mission of the agency. Similarly, an employee on a meal break may use an assigned OGV to travel to an eating establishment in the vicinity of the duty station or assignment.

The following activity is **not** authorized under this policy.

(1) Operating an OGV in violation of the agency's policies regarding consumption of alcohol while driving official vehicles;

(2) Operating an OGV when not performing official duties (such as weekends, holidays, or while on leave; and

(3) Transporting unauthorized persons (including but not limited to family members)

This new guidance is effective immediately and will be incorporated into both the Agents and Personnel Manuals.

56. Plaintiff Evangela Forbes is employed by the DEA as a Diversion Investigator. Plaintiff's Complaint, p. 1; Defendant's Answer, p. 1.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiff

Dated: July 31, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 31st day of July 2008, a copy of the foregoing "PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Jules Bernstein**